UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHERINE BARNES and ELIZABETH MENKOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KOS, INC.,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Catherine Barnes and Elizabeth Menkowitz ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant KOS, Inc. ("Defendant" or "KOS"), for manufacturing, marketing and distributing protein powder products that contain dangerous levels of per- and polyfluoroalkyl substances ("PFAS"), also known as "forever chemicals." Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**COMMON FACTUAL ALLEGATIONS**

1. KOS is a supplement company that sells plaint protein powders (the "Products"). The Products are marketed and advertised as "wellness" and "superfood" products that are "nature-powered" and "organic." An example is pictured below:



2. But, unfortunately for consumers, the Products contain something that humans should never ingest: dangerously high levels of PFAS chemicals.

3. Specifically, independent laboratory testing has likewise revealed that the following KOS protein powders tested positive for PFAS chemicals:

| Product Name | PFAS Detected | ng/g |
|---|---|---|
| KOS Organic Protein – Chocolate Flavored | PFOA | .341 |
|  | PFPeA | 1.61 |
| KOS Organic Protein – Chocolate Flavored | PFOA | .54 |
| KOS Organic Protein – Chocolate Flavored | PFOA | .292 |
|  | PFPeA | 1.46 |
| KOS Organic Protein – Chocolate Flavored | PFOA | .38 |

| KOS Organic Protein – Chocolate Flavored | PFOA | .187 |
|---|---|---|
| KOS Organic Protein – Chocolate Chip Mint Flavored | PFOA | .426 |
|  | PFPeA | 1.00 |
| KOS Organic Protein – Chocolate Chip Mint Flavored | PFOA | 0.38 |
| KOS Organic Protein – Chocolate Chip Mint Flavored | PFOA | .165 |
| KOS Organic Protein – Vanilla Flavored | PFOA | .189 |
| KOS Organic Protein – Vanilla Flavored | PFOA | .55 |
| KOS Organic Protein – Vanilla Flavored | PFOA | .451 |
|  | PFBA | .593 |
| KOS Organic Protein – Vanilla Flavored | PFOA | .448 |
|  | PFBA | 2.79 |
| KOS Organic Protein – Vanilla Flavored | 6:2 FTS | 6.16 |
| KOS Organic Protein – Vanilla Flavored | PFHxA | <.206 |
| KOS Organic Protein – Chocolate Peanut Butter Flavored | PFOA PFBA | .325 6.987 |
| KOS Organic Protein – Chocolate Peanut Butter Flavored | PFOA | .207 |
| KOS Organic Protein – Salted Caramel Coffee Flavored | PFOA | .235 |
| KOS Organic Protein – Blue Spirulina & Immunity Blend Blueberry Muffin Flavored | PFOA PFBA | .435 .685 |
| KOS Organic Protein – Unflavored & Unsweetened | PFOA PFBA | .813 .76 |

4. These PFAS chemicals are all dangerous to human health if ingested, even at very low levels.

5. PFAS are a family of more than 4,000 highly fluorinated aliphatic compounds manufactured by humans.

6. PFAS are known as "forever chemicals" due to their extended half-life and extreme persistence and bioaccumulation in human bodies.

7. PFAS have been shown to have a number of toxicological effects in laboratory

3

studies and have been associated with thyroid disorders, immunotoxic effects, and various cancers in epidemiology studies. The CDC has outlined a host of health effects associated with PFAS exposure, including cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease.

8. On October 18, 2021, underscoring the gravity of the PFAS threat, the Biden Administration announced accelerated efforts to protect Americans from PFAS, nothing that they "can cause severe health problems and persist in the environment once released, posing a serious threat across rural, suburban, and urban areas."

9. The specific PFAS found in KOS's Products are of particular concern.

10. Perfluorooctanoic acid ("PFOA"), one of the most extensively produced PFAS, is used to make carpets, clothing, fabrics for furniture, paper packaging for food and other materials (e.g., cookware) that are resistant to water, grease or stains. They are also used for firefighting at airfields and in a number of industrial processes. The half-life of PFOA is estimated to be 3.5 years in humans, while its half-life in soil may reach up to 1,000 years. The American Cancer Society has warned that studies in lab animals have found exposure to PFOA increases the risk of certain tumors of the liver, testicles, mammary glands (breasts), and pancreas. The presence of PFOA in the Products is entirely avoidable. Ingesting any amount of PFOA is unsafe for humans.

11. Perfluorohexanoic Acid ("PFPeA") is a breakdown product of stain- and grease-proof coatings on food packaging, couches, and carpets. With a similar structure to PFOA, PFPeA is known to cause cancer, disrupt hormones, and harm the immune system, liver function and fetal growth and development.

12. Perfluorohexanoic acid (PFHxA) is a breakdown product of stain- and grease-

proof coatings on food packaging, couches, and carpets. With a similar structure to PFOA, it is a known cause of hepatic, developmental, hematopoietic, and endocrine effects.

13. Perfluorobutanoic acid ("PFBA") has been used in non-stick and stain-resistant food packaging and carpets, as well as photographic film. In laboratory animal studies, exposure to high levels of PFBA resulted in thyroid and liver effects, such as increased thyroid and liver weight, changes in thyroid hormones, decreased cholesterol, and cellular changes in both organs. Other effects of PFBA exposure included delayed development and decreased red blood cells and hemoglobin.

14. 6:2 Fluorotelomer Sulfonate ("6:2 FTS") is known to cause kidney and liver damage.

15. In light of the harm caused by PFAS, consumers have grown increasingly aware of and concerned about PFAS in their bodies, the environment, and the products they use. In a survey of more than 1,000 consumers, nearly all participants (98%) indicated they were interested in knowing about the presence of harmful chemicals in everyday products.

16. No reasonable consumer would expect that a product marketed for one's health would contain dangerous PFAS, which are indisputably linked to harmful health effects in humans. Accordingly, Plaintiffs and Class Members suffered economic injuries as a result of purchasing the Products.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

18. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York such that Defendant has significant, continuous, and pervasive contacts with this state.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District. Additionally, a substantial part of the events giving rise to Plaintiffs' claims took place within this District because Plaintiff Barnes purchased the Product in this District and was therefore injured in this District.

## PARTIES

20. Plaintiff Catherine Barnes is, and at all times relevant to this action has been, a resident of Mount Vernon, New York. In approximately May of 2022, Ms. Barnes purchased Defendant's Chocolate and Vanilla Flavored protein powders from a Whole Foods store located in Westchester County, New York. When Ms. Barnes made her purchase, she believed that the Products supported "wellness," were each a "superfood," and that the Products were "nature-powered" and "organic." Ms. Barnes's belief was based on her review of the Product's advertising and marketing, and she relied on Defendant's representations in making her purchase. Had Defendant disclosed on the label that the Products contained PFAS chemicals, and the harms that can result from ingesting PFAS chemicals, she would not have purchased the Products, or at the very least, would have only been willing to pay significantly less. As a direct result of Defendant's material misrepresentations and omissions, Ms. Barnes suffered, and continues to suffer, economic injuries. Ms. Barnes would consider purchasing Defendant's Products in the future if Defendant removed the PFAS chemicals from them.

21. Plaintiff Elizabeth Menkowitz is, and at all times relevant to this action has been, a resident of New York, New York. In the Summer of 2023, while in New York, Ms.

6

Menkowitz purchased Defendant's Vanilla Flavored protein powder from Amazon. The Product was shipped to Ms. Menkowitz in New York, New York. When she made her purchase, Ms. Menkowitz believed that the Product supported "wellness," was a "superfood," and that the Product was "nature-powered" and "organic." Ms. Menkowitz's belief was based on her review of the Product's advertising and marketing, and she relied on Defendant's representations in making her purchase. Had Defendant disclosed on the label that the Products contained PFAS chemicals, and the harms that can result from ingesting PFAS chemicals, she would not have purchased the Product, or at the very least, would have only been willing to pay significantly less. As a direct result of Defendant's material misrepresentations and omissions, Ms. Menkowitz suffered, and continues to suffer, economic injuries. Ms. Menkowitz would consider purchasing Defendant's Products in the future if Defendant removed the PFAS chemicals from them.

22. The Product Ms. Menkowitz purchased and partially consumed was sent to an independent laboratory for testing. Consistent with the other independent testing described herein, the testing of Ms. Menkowitz's Product confirmed the presence of PFOA in an amount of .369 ng/g.

23. Defendant KOS, Inc. is a Delaware corporation with its principal place of business located in Santa Barbara, California. Defendant manufactures, markets, and distributes the Products throughout the United States.

## CLASS ACTION ALLEGATIONS

24. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated individuals nationwide (the "Class"), defined as follows:

>All consumers who purchased the Products within the United States during the statute of limitations period (the "Class Period") and until the date of class certification.

25. Included in the Class, to the extent necessary, is a subclass of all persons who purchased KOS Products (as defined herein) in New York during the Class Period (the "New York Subclass" or "Subclass").

26. Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

27. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common questions of law and fact include, without limitation:

   a. Whether Defendant is responsible for the advertising at issue;
   b. Whether the advertising of the Products was unfair, false, deceptive, fraudulent and/or unlawful;
   c. Whether Defendant breached a warranty created through the marketing of its Products; and
   d. Whether Defendant's conduct as set forth above injured Plaintiffs and Class members.

28. Plaintiffs' claims are typical of the claims of the Class in that they were exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Products, and suffered a loss as a result of those purchases.

29. The precise number of the Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.

30. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained

competent counsel experienced in prosecuting class actions involving false advertising, and they intend to prosecute this action vigorously.

31. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy and avoids the potential for inconsistent or contradictory judgments. The substantive claims of Plaintiffs and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiffs' and the Class members' claims together is manageable. Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

33. No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

34. The prerequisites to maintaining a class action for equitable relief are met: By

representing that the Products sold by Defendant promoted "wellness" and were "nature-powered" and by omitting the likelihood of PFAS exposure, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

35. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

36. Defendant's conduct is generally applicable to the Class as a whole, and Plaintiffs seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

37. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
### Violations of the New York General Business Law § 349
### (On Behalf of Plaintiffs and the New York Subclass)

38. Plaintiffs reallege and incorporate herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

39. The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

40. Defendant markets the Products as containing health benefits, when testing has shown the likely presence of PFAS, which have a negative impact on human health.

41. Defendant has violated, and continues to violate, § 349 of the New York General Business Law ("GBL"), which makes deceptive acts and practices unlawful. As a direct and

proximate result of Defendant's violation of § 349, Plaintiffs and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

42. Defendant's improper consumer-oriented conduct is misleading in a material way in that it, inter alia, induced Plaintiffs and the New York Subclass members to purchase and to pay the requested price for the Products when they otherwise would not have, or would not have been willing to pay as much.

43. Defendant made the untrue and/or misleading representations and omissions willfully, wantonly, and with reckless disregard for the truth.

44. Plaintiffs and the New York Subclass members have been injured by their purchase of the Products, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

45. Defendant's labelling induced Plaintiffs and the New York Subclass members to buy the Products, to buy more of them, and/or to pay the price requested.

46. As a direct and proximate result of Defendant's violation of § 349, Plaintiffs and other members of the New York Subclass paid for falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

47. By reason of the foregoing, Plaintiffs and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to GBL § 349(h).

## COUNT II
### Violations of the New York General Business Law § 350
### (On Behalf of Plaintiffs and the New York Subclass)

48. Plaintiffs reallege and incorporate herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

49. The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

50. GBL § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

51. GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

52. Plaintiffs and the members of the New York Subclass are consumers who purchased Defendant's Products in New York.

53. As a seller of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of § 350.

54. Defendant's representations (made by statement, word, design, device, sound, or any combination thereof), and also the extent to which Defendant's advertising has failed to reveal material facts with respect to its Products, as described above, have constituted false advertising in violation of § 350.

55. Defendant's actions led to direct, foreseeable, and proximate injury to Plaintiffs and the members of the New York Subclass.

56. As a consequence of Defendant's deceptive marketing scheme, Plaintiffs and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, would not have paid the requested price for the Products and/or would have purchased fewer of the Products; moreover, as a result of Defendant's conduct, Plaintiffs and the other members of the New York Subclass received Products of less value than what they paid for.

57. By reason of the foregoing, Plaintiffs and the New York Subclass members are

entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to GBL § 350-e(3).

## COUNT III
### Breach of Express Warranty
### (on Behalf of Plaintiffs and All Class Members)

58.     Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

59.     Plaintiffs bring this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

60.     In connection with the sale of the Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Products promoted "wellness," are "superfoods," and are "nature-powered" and "organic."

61.     In fact, the Products do not conform to the above-referenced representations because the Products contain dangerously high levels of PFAS chemicals.

62.     Plaintiffs and the members of the proposed Class and the New York Subclass were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Products if they had known the Products contain dangerously high levels of PFAS chemicals, and (b) they overpaid for the Products on account of the Product's misrepresentations.

63.     Plaintiffs' counsel notified Defendant of Ms. Barnes's claims in a demand letter, sent via Certified Mail, on August 1, 2023.

64.     Plaintiffs' counsel notified Defendant of Ms. Menkowitz's claims in a demand letter, sent via Certified Mail, on September 26, 2023.

## COUNT IV
### Breach of Implied Warranty of Merchantability
### (on Behalf of Plaintiffs and All Class Members)

65. Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

66. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass.

67. Defendant, as the designer, manufacturer, distributor and seller, impliedly warranted that the Products were fit for their intended purpose in that the Products were safe to ingest. Defendant did so with the intent to induce Plaintiffs and proposed Class and Subclass members to purchase the Products.

68. Defendant breached it implied warranty because the Products each contain dangerously high levels of PFAS chemicals.

69. Plaintiffs and proposed Class and Subclass members were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Products had they known the Products each contain dangerously high levels of PFAS chemicals, (b) they overpaid for the Products because they are sold at a price premium when compared to similar products that do not contain dangerously high levels of PFAS chemicals, and (c) the Products did not have the characteristics, uses, or benefits as promised, namely that they promoted "wellness," are "superfoods," and are "nature-powered" and "organic."

## COUNT V
### UNJUST ENRICHMENT
### (on Behalf of Plaintiffs and All Class Members)

70. Plaintiffs reallege and reincorporate by reference all paragraphs alleged above.

71. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass.

14

72.     Plaintiffs and the proposed Class and Subclass members conferred benefits on Defendant by purchasing the Products.

73.     Defendant had knowledge of such benefits.

74.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the proposed Class and Subclass members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that they promoted "wellness," are "superfoods," and are "nature-powered" and "organic," when, in fact, they contain dangerously high levels of PFAS chemicals, and made omissions about those chemicals.

75.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and proposed Class and Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the proposed Class and Subclass members for its unjust enrichment, as ordered by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the other Class members respectfully request the Court:

a.  For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and New York Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and New York Subclass members;

b.  For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiffs, the nationwide Class, and the New York Subclass on all causes of action asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

h.      For an order awarding Plaintiffs and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: November 16, 2023

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s *Joshua D. Arisohn*
      Joshua D. Arisohn

Joshua D. Arisohn
Philip L. Fraietta
Alec M. Leslie
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jarisohn@bursor.com
          pfraietta@bursor.com
          aleslie@bursor.com

*Attorneys for Plaintiffs*